**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) ) ) ) | **CRIMINAL NO:** |
|  | ) ) | **GRAND JURY ORIGINAL** |
|  | ) ) | **VIOLATIONS:** |
| v. | ) ) | 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) |
| **JAMES PIERCE,** | ) ) ) ) ) | 18 U.S.C. § 1343 (Wire Fraud) |
|  | ) ) ) | 18 U.S.C. § 981(a)(1)(c); 21 U.S.C. §853(p); and 28 U.S.C. § 2461(c) (Forfeiture Allegation) |
| **Defendant.** | ) ) ) ) ) ) | |

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise stated:

### Introduction

1. Defendant JAMES PIERCE was a resident of Texas. He represented that he had expertise in providing bank information that would show that a person had sufficient credit to finance large commercial transactions. The email accounts jp@jpierceinvestments.com and james@jpierceinvestments.com, among others, belonged to PIERCE.

2. CC-1 was a resident of Washington, D.C.

3. Bank 1 was a bank based in the Dominican Republic.

4. Victim A was a resident of California.

5. Victim B was a resident of Florida, and the owner of Company B.  Company B was a company registered and incorporated in Florida in 2010.  Company B was created by Victim B in or about June 2010 for the purpose of trading futures and commodities.

6. Victim C was a resident of the state of Virginia, and the treasurer of Company C.  Company C was a company registered and incorporated in Nevada whose business was located in northern Virginia.  Company C was created by Victim C and his partners in or about June 2013 for the purpose of pursuing business opportunities relating to the purchase and sale of oil and oil products.

7. The Society for Worldwide Interbank Financial Telecommunication ("SWIFT") was a global member-owned cooperative and the world's leading provider of secure financial messaging services. It was a network enabling financial institutions worldwide to send and receive information about financial transactions in a secure, standardized and reliable environment.  SWIFT was headquartered in La Hulpe, Belgium.

**Background Regarding SWIFT Transactions**

8. One type of SWIFT message was the Message Type (MT)-760, which was a guarantee associated with a Standby Letter of Credit (SBLC).  An SBLC was a guarantee of payment issued by a bank on behalf of a client.  SBLCs were created as a sign of good faith in business transactions and were proof of the holder's credit quality and repayment abilities.

9. An MT-799 was a "Free Format" SWIFT message that a financial institution could use as a catch-all for communications that did not correspond with other standardized SWIFT messages.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

10. The allegations set forth in paragraphs 1 through 9 of this Indictment are re-alleged and incorporated as if fully set forth in this paragraph.

### The Conspiracy

11. From in or about February 2011, and continuing through in or about October 2013, within the District of Columbia and elsewhere, the defendant,

### JAMES PIERCE,

together with co-conspirators known and unknown to the Grand Jury, did knowingly and intentionally conspire, combine, confederate, and agree to commit offenses against the United States, that is to knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice, to transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343 (wire fraud).

### The Object of the Conspiracy

12. The object of the conspiracy was for PIERCE and his co-conspirators to obtain money from their victims by falsely representing that they could provide the victims with documentation showing that the victims had access to funds on deposit at Bank 1.

**Manner and Means**

13. Among the manner and means by which PIERCE, together with co-conspirators known and unknown to the Grand Jury, would and did carry out the objectives of the conspiracy were the following.

14. PIERCE, together with his co-conspirators, chose victims by identifying individuals who were seeking non-traditional financing for large commercial transactions.

15. PIERCE, together with his co-conspirators, falsely represented to victims that PIERCE and his co-conspirators had funds on deposit at Bank 1 when, in fact, PIERCE and his co-conspirators did not have accounts at Bank 1 and did not otherwise have access to or control of funds at Bank 1.

16. PIERCE, together with his co-conspirators, falsely represented to victims that PIERCE and his co-conspirators could cause Bank 1 to issue SWIFT messages showing that the victims had access to funds on deposit at Bank 1.

17. PIERCE, together with his co-conspirators, fraudulently caused the victims to pay a fee, either directly or through an escrow agent, in exchange for the issuance of SWIFT messages from Bank 1 showing that the victims had access to funds on deposit at Bank 1 when, in fact, PIERCE and his co-conspirators had no ability to cause Bank 1 to issue such SWIFT messages.

18. PIERCE, together with his co-conspirators, provided victims with false and fraudulent SWIFT messages that purported to show that Bank 1 had issued SWIFT messages as promised.

19. After the victims did not receive their bank instruments, PIERCE, together with his co-conspirators, provided the victims with a number of excuses and false statements,

including that Bank 1 had in fact sent the SWIFT messages and that their transmission had been confirmed.

20. PIERCE, together with his co-conspirators, attempted to discourage the victims from contacting Bank 1 directly.

21. In several instances where a victim paid funds through an escrow agent, PIERCE, together with his co-conspirators, provided the escrow agent with false and fraudulent SWIFT messages that purported to show that Bank 1 had issued SWIFT messages to induce the escrow agents to release the victim's funds.

22. PIERCE, together with his co-conspirators, diverted the fraud proceeds for their personal use and benefit.

## Victim A

23. In or around February 2011, Broker A falsely represented to Victim A that, in exchange for a fee, Bank 1 would issue a SWIFT MT-760 message to a designated bank, which could be used as collateral to obtain a loan. After Victim A paid for the transaction and the designated bank failed to receive the SWIFT message, PIERCE contacted Victim A and falsely told him that Bank 1 had transmitted it. PIERCE also provided Victim A with false Bank 1 documentation that purported to relate to the promised SWIFT transmission. Bank 1 never transmitted the SWIFT MT-760 message to the designated bank.

## Victim B

24. In or about May 2013, CC-1 falsely represented to Victim B that, in exchange for a fee, Bank 1 would issue a SWIFT MT-760 message to a bank identified by Victim B, which Company B could use to help finance a transaction. PIERCE and CC-1 then provided false Bank

1 documents to Victim B, which purported to show that Bank 1 had transmitted a SWIFT MT-760 message to the bank designated by Victim B.

25.     After Victim B's bank did not receive the purported SBLC from Bank 1, Victim B paid additional money for Bank 1 to "re-issue" the SBLC to a different bank.  PIERCE and CC-1 then provided additional false bank documentation to Victim B.  Bank 1 never transmitted a SWIFT MT-760 message to any of the banks designated by Victim B.

### Victim C

26.     In or around June 2013, CC-1 falsely represented to Victim C that, in exchange for a fee, Bank 1 would issue a SWIFT MT-799 message to a bank account identified by Victim C, which Company C could use to help finance a transaction.  PIERCE and CC-1 then provided false Bank 1 documents to Victim C, which purported to show that Bank 1 had transmitted a SWIFT MT-799 message to the bank designated by Victim C.

27.     After Victim C's bank did not receive the purported SBLC from Bank 1, Victim C paid additional money for Bank 1 to "re-issue" the SBLC to a different bank.  PIERCE and CC-1 then provided additional false bank documentation to Victim C.  Bank 1 never transmitted a SWIFT MT-799 message to any of the banks designated by Victim C.

### Additional Victims

28.     Following the events described above, on or about September 27, 2013, CC-1 e-mailed PIERCE and stated that he had found another individual interested in obtaining an SBLC from Bank 1, and that the individual might be able to refer additional people.  On or about October 2, 2013, CC-1 sent another e-mail to PIERCE, seeking confirmation that the terms of the individual's proposed SBLC were acceptable.

**(Conspiracy to Commit Wire Fraud, in violation of
Title 18, United States Code, Sections 1343 and 1349)**

## COUNTS TWO AND THREE
### (Wire Fraud – 18 U.S.C. § 1343)

29. Paragraphs 1 through 9 and 12 through 28 of this Indictment are realleged and incorporated herein as though set forth in full.

30. From in or about February 2011, and continuing through in or about October 2013, in the District of Columbia and elsewhere, the defendant,

**JAMES PIERCE,**

knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purposes of executing such scheme and artifice.

31. On or about the dates specified as to each count below, PIERCE, in the District of Columbia and elsewhere, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| Count | On or About Date of Wire Communication | Description of Wire Communication |
|---|---|---|
| TWO | August 1, 2013 | E-mail that PIERCE caused to be sent from outside the District of Columbia to CC-1 in the District of Columbia providing false bank documentation for Victim C |

7

| | | |
|---|---|---|
| THREE | August 1, 2013 | Electronic communication initiated by CC-1 in the District of Columbia sent outside the District of Columbia to cause the transfer of approximately $50,000 in victim proceeds from CC-1's bank account to PIERCE's bank account |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

## FORFEITURE ALLEGATION

32. Upon conviction of the offenses alleged in Count One through Count Three, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

33. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

(**Criminal Forfeiture, pursuant to Title 18, United States Code, Section 982(a)(1), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p)**)

A TRUE BILL,

_____
FOREPERSON

SANDRA L. MOSER
Acting Chief, Criminal Division, Fraud Section
United States Department of Justice

By: _____
BLAKE C. GOEBEL
Trial Attorney

9