UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 18-CR-230 |
| v. : | |
| : | |
| JAMES PIERCE : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States hereby provides notice of its intent to introduce evidence pursuant to Federal Rule of Evidence 404(b) regarding the defendant, James Pierce.[1]

On July 31, 2018, a federal grand jury charged the defendant with one count of conspiracy to commit wire fraud and two counts of wire fraud in violation of 18 U.S.C. § 1349 and 18 U.S.C. § 1343, respectively. (Dkt. 4). The indictment alleges that Pierce and his co-conspirators falsely represented that they could provide victims with documentation showing that the victims had access to funds on deposit at a bank in the Dominican Republic (Bank 1). (*Id.* at 3). The victims believed they could use that documentation to help them obtain financing for commercial transactions. (*See id.* at 4). In reality, neither Defendant Pierce nor his co-conspirators had access to funds at the bank and had no ability to cause the bank to issue the purported documentation. (*Id.*). Instead, the conspirators gave the victims fake Bank 1 documentation and took hundreds of

---

[1] Government counsel informed defense counsel of its intention to introduce this evidence by letter on August 16, 2019. Previously, government counsel had discussed its intention to introduce much of this evidence with defense counsel, and the government highlighted certain of this evidence in its March 14, 2019 Response to Defendant's Motion to Modify His Conditions of Release.

thousands of dollars of their money. (*See id.* at 4-6). In some instances, victims were even tricked into making additional payments to have Bank 1 "re-issue" the fraudulent documents. (*Id.* at 6).

## FACTUAL BACKGROUND

The Government expects the main issue at trial to be the defendant's fraudulent intent. To help prove the defendant's fraudulent intent, and to rebut any defense that the defendant was acting mistakenly or in good faith when he provided victims with false Bank 1 documentation, the Government seeks to introduce evidence that following the transactions charged in the Indictment that defrauded Victims A, B, and C, the defendant continued to carry out the same fraudulent scheme. Specifically, the government seeks to introduce two categories of evidence.

I. **Victim D and Individual A Evidence**

First, the government seeks to introduce evidence detailing Pierce's involvement with two transactions defrauding an additional victim (Victim D), as well as evidence that Pierce was communicating directly through WhatsApp electronic messages with the individual who appears to have provided Victim D's fake bank documentation (Individual A)—this time from a Costa Rican subsidiary of another international bank ("Bank 2").

The government expects Victim D to testify that she first came into contact with Broker B[2] over the Internet in or around December 2016. Broker B represented that in exchange for payment, Broker B would cause a bank in Costa Rica to issue a standby letter of credit ("SBLC") in the amount of several million dollars, which the Costa Rican bank would transmit to a receiving bank. The victim could then access a line of credit that the receiving bank would issue based on the SBLC. Victim D made an initial payment to the escrow agent for the transaction in or about December 2016. In exchange, Broker B sent Victim D purported documentation from the Costa

---

[2] "Broker A" is identified in ¶ 23 of the Indictment.

2

Rican bank that appeared to show that Individual A at the Costa Rican bank had issued her SBLC. However, her bank never received the documents, and the government expects a representative of Bank 2 to testify that the purported bank documents that Victim D was provided were false.

Broker B then instructed Victim D to pay $30,000 directly into a bank account controlled by Pierce to have the documents re-issued—which she did in January 2017. Once again, that transaction failed, and this time Victim D did not receive any purported documentation from the Costa Rican bank. Following the failure of Victim D's transactions, she sent a number of e-mails to Pierce, Individual A, and Broker B through June and July of 2017, accusing them of fraud for providing her with fake bank documentation. Victim D sent approximately one dozen e-mails to Pierce alone. Pierce did not respond back to her, although he did ultimately refund Victim D the $30,000 that she paid him.

Around this same time, Pierce was in direct communication with Individual A (the purported Costa Rican banker) over WhatsApp. On July 6, 2017, Individual A reminded Pierce in a WhatsApp communication that Individual A was taking a risk by providing fake bank documentation (translated from Spanish):

> Please understand that each time I do a letter or an email, I am taking a risk that does not allow me to do those things for free.

Despite this, less than one month later the defendant again requested fraudulent bank documentation from Individual A. On August 3, 2017, the defendant wrote to Individual A (translated from Spanish):

> I need a RWA letter[3] for a client[.] I can send you $500 right now via MG [Moneygram] or WU [Western Union] and you can get it out of [Bank 2] with your information and your direct number so that they can call you to confirm it[,] and from there the client can then get the money to send to you and to pay for sending the Swift!

---

[3] "RWA" stands for "ready, willing, and able." An "RWA" letter is a letter purportedly from a bank in which the bank states that it is "ready, willing, and able" to perform a service on behalf of a client.

Pierce then sent Individual A a receipt appearing to show that Pierce paid him $1,000 through a money transfer service in Costa Rica.

## II.     **Individual B Evidence**

Following the failure of the transactions charged in the Indictment and the fraudulent Victim D transactions described above, WhatsApp communications seized from the defendant's phone show that Pierce continued to communicate with another individual (Individual B) in 2017 and 2018 about providing fake Bank 2 documentation to victims. These communications include Pierce and Individual B exchanging drafts of false Bank 2 documents. Importantly, there is evidence that Individual B participated in the conduct charged in the Indictment as well. The government expects an FBI forensic accountant to testify that a review of the relevant bank records indicates that Pierce's co-conspirator transferred some of the proceeds from Victim C's transactions in 2013 to Individual B.

With respect to the WhatsApp communications between Pierce and Individual B, in January 2018, Pierce forwarded Individual B an e-mail from a victim which stated that the victim's organization was "advised by Senior Legal Counsel" at Bank 2 that the documents they received were "not authentic or valid." Then in March 2018, the Defendant forwarded Individual B pictures of a letter drafted by the law firm of another victim. That letter, which was addressed to Pierce, claimed that Pierce falsely promised to deliver a Standby Letter of Credit (SBLC) and that Pierce's failure to do so amounted to fraud. The letter further claimed that "verified bank officials have confirmed that none of the monies were ever received and that the documents purportedly issued by banks were completely fraudulent." The defendant also forwarded to Individual B a photo of an email received by the victim from Bank 2, which confirmed that the documents that the victim had been provided "were not created, issued, or sent" by Bank 2.

Following this flood of communications between Pierce and Individual B regarding fraudulent Bank 2 documentation, Pierce and Individual B worked together through WhatsApp communications to create yet another set of fake Bank 2 documentation to provide to an additional victim (Victim E).  On May 11, 2018, Individual B sent Pierce a purported letter from Bank 2 that affirmed that Victim E had at least €500 million on deposit.  Then on June 5, 2018, Pierce forwarded an email to Individual B in which Victim E was informed by a purported Bank 2 representative that a document provided to Victim E was a fraud and that he "should report that to the police."  Pierce commented to Individual B (translated from Spanish): "[I]t's better to say, I'm going to look into it[;] I don't remember!  Instead of call the police[,] don't you think?"

Then just three days later, the Defendant sent Individual B a template for another purported Bank 2 letter to provide to Victim E.  Pierce told Individual B (translated from Spanish) that this was a draft and that an individual named "Leroy" should e-mail the final version.  Approximately three weeks later, Individual B sent an updated version of the draft back to Pierce, now on Bank 2 letterhead and signed by an employee named Leroy, along with screenshots of a purported online account statement for Victim E.  Pierce responded (translated from Spanish) that the statement was wrong because "it needs to be stated in dollars or euros."

The government expects that a representative of Bank 2 will testify that none of the purported Bank 2 documents for Victim E that Pierce exchanged with Individual B were legitimate Bank 2 documents.

**LEGAL STANDARD**

Evidence of a crime, wrong, or other act is admissible to prove intent, knowledge, absence of mistake, and a common plan or scheme.  Fed. R. Evid. 404(b)(2); *United States v. Thompson*, 921 F.3d 263, 269 (D.C. Cir. 2019).  Courts in the D.C. Circuit perform a two-step analysis to

determine the admissibility of other acts evidence under Rule 404(b). *See United States v. Bikundi*, No. 14-cr-030 (BAH), 2015 WL 5915481, at *5 (D.D.C. Oct. 7, 2015) (Howell, J.) (citing *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990)). First, courts look to Rule 404(b) and assess whether the proposed evidence is being introduced for a permissible purpose and whether the evidence is relevant to that purpose. *Id.* Second, courts apply Rule 403 and balance the probative value of the proposed evidence against its potential to prejudice the defendant. *Id.*

"Rule 404(b) is a rule of inclusion rather than exclusion." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 177 (D.D.C. 2015) (Howell, J.) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). Rule 404(b) is "quite permissive" and allows the admission of other acts evidence "so long as the evidence is offered for any other relevant purpose" than that a defendant's actions conformed to his character. *See Bikundi*, 2015 WL 5915481, at *5 (quoting *Bowie*, 232 F.3d at 929-30) (citing *United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015) (per curiam)). "Extrinsic acts evidence may be critical …, especially when th[e] issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). Additionally, "Rule 404(b) draws no distinction between bad acts committed before and bad acts committed after the charged offense … In each case the question Rule 404(b) poses is whether the bad acts evidence is relevant …" *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997).

## ANALYSIS

I. **The Government's Proffered Evidence is Highly Probative of the Defendant's Fraudulent Intent to Commit the Charged Crimes**

The main issue at trial in this case will likely be the defendant's fraudulent intent. The government expects to introduce evidence that Pierce and his co-conspirators told victims that they

could help the victims obtain letters of credit from Bank 1 in the Dominican Republic in exchange for payment. The government will introduce further evidence that, in reality, the defendant and his co-conspirators had no ability to obtain such letters of credit, and instead provided the victims with false Bank 1 documents and took their money. The government's proffered evidence is highly probative of the defendant's intent. It would, for example, rebut an argument by the defendant that he believed that the bank documentation he provided to victims was legitimate.

As described above, this evidence will show that after the failure of the transactions involving Victims A, B, and C charged in the Indictment, the defendant: a) continued to try to defraud additional victims using the same scheme; and b) communicated directly with additional co-conspirators about providing fake documents to victims, including exchanging drafts of the false documents. In other words, rather than halting his conduct after the failure of the charged transactions, he continued to pursue the exact same scheme with additional participants and fake documents from a different bank. With respect to the Individual B evidence specifically, the evidence will show that Individual B received proceeds from the charged conduct as well. Thus, to the extent that the defendant argues at trial that he was relying on others that he believed provided a legitimate connection to Bank 1, the government respectfully requests that it be able to present evidence to the jury that the defendant was continuing to exchange drafts of fake bank documents with Individual B several years later.

Courts have repeatedly admitted other acts evidence that helped to prove that a defendant was not acting in good faith or had the specific intent to defraud. *See Brown*, 597 F.3d at 405 (warnings given to the defendant of the unlawfulness of presenting fictitious bank documents as legitimate was probative of defendant's fraudulent intent in later bank fraud charge because it showed defendant's knowledge and absence of mistake); *Bowie*, 232 F.3d at 930 (evidence of a

prior arrest for possessing and passing counterfeit notes was probative of defendant's knowledge and intent in later counterfeit currency possession charge); *see also United States v. Hassanshahi*, 195 F. Supp. 3d 41-47 (D.D.C. 2013) (a prior court decision that a contract was unenforceable because the terms violated federal laws prohibiting trade with Iran was probative of defendant's knowledge and intent in later charges alleging unlawful trade with Iran); *Bikundi*, 2015 WL 5915481, at *4-6 (Medicaid provider agreements and an on-site inspection report detailing Medicaid program requirements were probative of defendant's knowledge and intent in later health care fraud prosecution).

    Indeed, the facts here are similar to *Brown*. There, the Court of Appeals for the D.C. Circuit upheld a district court's decision to admit evidence that a defendant charged with bank fraud and passing fictitious financial instruments had at other times attempted to use fake "bills of exchange" to deposit funds at another bank and purchase a house and three cars. *Brown*, 597 F.3d at 399-400, 402. More specifically, the court held that warnings by a Secret Service detective and counsel at a commercial bank that the "bills of exchange" were invalid were relevant to the defendant's knowledge and intent and undermined his claims of good faith. *Id.* at 404-05. Similarly here, Pierce continued to provide victims with false bank documents after the transactions charged in the Indictment had failed, and indeed, after he learned that a Bank 1 security official had confirmed that the documents were fake. This evidence shows that Pierce knew that the documents he and his co-conspirators provided to victims as part of the charged conduct were false and rebuts any claim of good faith mistake.

    Additionally, this evidence should not be excluded because it took place after, rather than before, the charged conduct, or because it took place several years later. *See Latney*, 108 F.3d at 1449 ("Rule 404(b) draws no distinction between bad acts committed before and bad acts

committed after the charged offense … In each case the question Rule 404(b) poses is whether the bad acts evidence is relevant…"). Courts have held that the more closely related the conduct is to the charged offense, the less temporally tied it need be. S*ee Hassanshahi*, 195 F. Supp. 3d at 45-46 (D.D.C. 2016) ("Where the degree of similarity between the acts is strong, courts have countenanced the admission of evidence notwithstanding a lengthy period of time between the two events."); *Latney*, 108 F.3d at 1449 ("One . . . cannot formulate a general rule . . . that any bad act committed more than a certain time after the charged offense is inadmissible . . . .")  Here, Pierce is engaging in essentially the exact same fraudulent scheme providing victims with false bank documents several years after the charged conduct—which rebuts a defense that he was acting in good faith or that he mistakenly provided the victims of the charged conduct documents not knowing they were false.

## II.    The Evidence is Not Unfairly Prejudicial under Rule 403 and Will Not Require an Undue Amount of Trial Time to Introduce

Under the second step of the two-step Rule 404(b) analysis, the probative value of the government's proffered evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403.  The government is not introducing it to prove that the defendant acted in conformity with his character, but instead, as discussed in detail above, because the evidence is highly probative of the defendant's fraudulent intent and shows that he was not acting in good faith or by mistake when he provided the victims with false bank documents.

Importantly, this evidence will not be cumulative and will not take an undue amount of trial time.  It will involve one additional victim witness (Victim D), likely one additional witness from Bank 2 whose testimony will be brief, and limited additional testimony from the FBI case agent and FBI forensic accountant, who are already expected to testify.  The government intends on introducing additional exhibits, the majority of which will be short e-mail and WhatsApp

9

electronic communications either involving Victim D, or between Pierce and co-conspirators. This evidence will not significantly extend the length of the government's case in chief and will be introduced efficiently.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court admit Rule 404(b) evidence of Defendant Pierce's intent, knowledge, absence of mistake, and common plan or scheme.

                Respectfully submitted,

                ROBERT ZINK
                Chief, Fraud Section
                Criminal Division
                United States Department of Justice

By:   /s/ Blake Goebel
        Blake C. Goebel, Trial Attorney
        Justin Weitz, Assistant Chief
        Criminal Division, Fraud Section
        United States Department of Justice
        1400 New York Ave. N.W.
        Washington, D.C. 20005
        (202) 616-5010
        Blake.Goebel@usdoj.gov