UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 18-CR-230 |
| v. : | |
| : | |
| JAMES PIERCE : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE GOVERNMENT'S RULE 404(b) EVIDENCE**

The United States, through its attorneys, respectfully submits this response in opposition to the defendant James Pierce's motion to exclude evidence described in the government's Rule 404(b) notice.[1]

As described in detail in the government's notice of its intent to introduce Rule 404(b) evidence filed with the Court on September 7, 2019 (Dkt. No. 28) (the "September 404(b) Notice")[2], the government seeks to admit evidence that after the failure of the transactions involving Victims A, B, and C charged in the Indictment, the defendant: a) continued to try to defraud additional victims using the same scheme of providing them with fake bank documents; and b) communicated directly with additional co-conspirators about providing fraudulent bank documents to victims, including exchanging drafts of the false documents. As the defendant has now confirmed in the Joint Pretrial Statement, he plans to contend at trial that he believed that his

---

[1] Government counsel informed defense counsel of its intention to introduce certain evidence by letter on August 16, 2019 (the "August 404(b) Notice"). The government then filed a more detailed notice with the Court on September 7, 2019. (Dkt. 28) (the "September 404(b) Notice"). The defendant's motion only references the government's August 16, 2019 letter.

[2] As detailed in the September 404(b) Notice, the government seeks to introduce this evidence under Rule 404(b). Although the government's August 404(b) Notice also stated that the government viewed this evidence as intrinsic to the crimes charged, the government is not advancing that theory here.

1

representations were "accurate and truthful," and that he relied in "good faith on the representations of others" that the "letters of credit were genuine and lawful." (Dkt No. 30, at 5). Thus, the defendant's fraudulent intent will likely be the key disputed issue in this case, and the government's proffered 404(b) evidence goes directly to this point. It will show that rather than halting his conduct after the failure of the charged transactions, which he would have done if he were acting in good faith, he continued to carry out the same fraudulent scheme with additional participants and fake documents from a different bank.

## ARGUMENT

**I.    The Government's Proffered Evidence is Highly Probative of the Defendant's Fraudulent Intent to Commit the Charged Crimes**

As the government described in detail in the September 404(b) Notice, the government's proffered Rule 404(b) evidence is highly probative of the defendant's fraudulent intent to commit the charged crimes. "Rule 404(b) is a rule of inclusion rather than exclusion." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 177 (D.D.C. 2015) (Howell, J.) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). Rule 404(b) is "quite permissive" and allows the admission of other acts evidence "so long as the evidence is offered for any other relevant purpose" than that a defendant's actions conformed to his character. *See United States v. Bikundi*, No. 14-cr-030 (BAH), 2015 WL 5915481, at *5 (D.D.C. Oct. 7, 2015) (quoting *Bowie*, 232 F.3d at 929-30 (citing *United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015) (per curiam))). "Extrinsic acts evidence may be critical . . . , especially when th[e] issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)).

Here, the Indictment alleges that Pierce and his co-conspirators falsely represented that they could provide victims with documentation showing that the victims had access to funds on deposit at a bank in the Dominican Republic (Bank 1). (*Id*. at 3). The victims believed they could use that documentation to help them obtain financing for commercial transactions. (*See id*. at 4). In reality, neither the defendant nor his co-conspirators had accounts at the bank, access to funds at the bank, or any ability to cause the bank to issue the purported documentation. (*Id*.) Instead, the conspirators gave the victims fake Bank 1 documentation and took hundreds of thousands of dollars of their money. (*See id*. at 4-6). In some instances, victims were even tricked into making additional payments to have Bank 1 "re-issue" the fraudulent documents. (*Id*. at 6). As discussed above, the defendant plans to contend at trial that he believed that his representations were "accurate and truthful," and that he relied in "good faith on the representations of others" that the "letters of credit were genuine and lawful." (Dkt. No. 30, Joint Pretrial Stmt. at 5). The government's Rule 404(b) evidence will directly rebut Pierce's contention that he was acting in good faith during the charged conduct.

As part of proving the conduct alleged in the Indictment, the government expects to introduce evidence showing that Pierce knew that the charged transactions had failed. In one example, in a July 23, 2013 e-mail, Pierce's co-conspirator forwarded Pierce an e-mail from Victim B regarding the failure of Victim B's transactions, and Pierce's co-conspirator wrote to Pierce: "James, [j]ust received the following disturbing email from our client . . . who wants me to answer some disturbing questions regarding BPD." (GX 209, DOJ-0009863). Similarly, in an August 8, 2013 e-mail, Pierce's co-conspirator forwarded Pierce an e-mail from Victim C about the failure of Victim C's second transaction. Pierce's co-conspirator then wrote to Pierce that if the promised bank documentation "does not show up," "you and I will be in deep S*** with the

Law Enforcement Authorities in USA and as well as INTERPOL, and the ratifications [*sic*] will be beyond our imaginations." (GX 213, DOJ-0010341).

If Pierce were acting in good faith and did not intend to defraud the victims of the charged conduct, he would have stopped providing victims with fake bank documents once he knew they were false. Instead, the government's evidence shows that he continued to defraud additional victims using the same scheme. As described in the September 404(b) Notice, the government's first category of evidence shows Pierce's involvement in defrauding an additional victim with a false letter of credit (Victim D), as well as WhatsApp electronic messages sent directly between Pierce and the individual who appears to have provided Victim D's fake bank documentation (Individual A)—this time from a Costa Rican subsidiary of another international bank ("Bank 2"). The second category of evidence is electronic WhatsApp communications between Pierce and another individual (Individual B) in 2017 and 2018 about providing fake Bank 2 documentation to victims. The government's proffered 404(b) evidence shows that despite knowing that the charged transactions had failed, the defendant continued to try to defraud additional victims with fake letters of credit, and even worked together with Individual B through WhatsApp communications to create another set of fake Bank 2 documentation.

Further, with respect to the Individual B evidence specifically, the government will show that Individual B received proceeds from the charged conduct as well. This is powerful evidence to rebut the defendant's contention that he was relying in good faith on representations made by others involved in the charged conduct. It shows that several years later the defendant continued to work with one of those same individuals to create fake bank documents to send to victims.

The defendant also argues in his motion that the government's August 404(b) Notice claims that the other acts involve false "bank documentation" or "documents" more generally, but that

the focus of the scheme alleged in the Indictment is fraudulent standby letters of credit.  The Court should reject this argument for two reasons.  First, the September 404(b) Notice specifies that the Victim D transaction also involved a fraudulent standby letter of credit.  Second, the fraudulent scheme alleged in the Indictment is broader than just providing false standby letters of credit.  For example, the Indictment alleges that the defendant also provided Victim A with "false Bank 1 documentation that purported to relate" to his transaction.  (Dkt. No. 5, ¶ 23).  Indeed, at trial, the government anticipates introducing into evidence fake Bank 1 documents that the defendant and his co-conspirators provided to victims in addition to just the fraudulent letters of credit themselves.

## II. The Government's Evidence Should Not be Excluded Because it Took Place Several Years after the Charged Conduct

This evidence should not be excluded because it took place after, rather than before, the charged conduct, or because it took place several years later.  First, in his motion, the defendant argues that the proffered evidence cannot show the defendant's intent because it took place after the crimes charged in the Indictment.  That is not the law in the D.C. Circuit.  In *United States v. Latney*, the D.C. Circuit held that "Rule 404(b) draws no distinction between bad acts committed before and bad acts committed after the charged offense."  108 F.3d 1446, 1449 (D.C. Cir. 1997).  Indeed, *Latney* explicitly disagreed with the holding of the Third Circuit case cited by the defendant, *United States v. Boyd*, 595 F.2d 120 (3d Cir. 1978), and noted that the law in the Third Circuit has since changed to allow the admission of some subsequent acts under 404(b).  *Id*. at 420.  *Latney* affirmed the introduction of Rule 404(b) evidence that took place after the charged conduct to show the defendant's intent and knowledge in a drug distribution case: "[t]he probative force of the [later 404(b)] evidence for these purposes seems to us beyond question . . . .  Given [the defendant's] involvement in the crack cocaine trade in May 1995, it was less likely that he

was merely a bystander in the September 1994 transaction, as his counsel sought to persuade the jury." *Id*. at 419.  Similarly here, the Court should admit the government's proffered evidence because the defendant's continued involvement in defrauding victims with false bank documents shows that he was not a good-faith participant in the charged transactions several years earlier.

Next, the proffered Rule 404(b) evidence should also not be excluded because it took place several years after the charged conduct.  Courts have held that the more closely related the conduct is to the charged offense, the less temporally tied it needs to be.  *See United States v. Hassanshahi*, 195 F. Supp. 3d at 45-46 (D.D.C. 2016) ("Where the degree of similarity between the acts is strong, courts have countenanced the admission of evidence notwithstanding a lengthy period of time between the two events."); *Latney*, 108 F.3d at 1449 ("One . . . cannot formulate a general rule . . . that any bad act committed more than a certain time after the charged offense is inadmissible . . . .")  Here, the later conduct is extremely similar to the charged offense, and involves one of the same individuals who received proceeds from the charged conduct.

### III. The Evidence is Not Unfairly Prejudicial under Rule 403 and Will Not Require an Undue Amount of Trial Time to Introduce

Under the second step of the two-step Rule 404(b) analysis, the probative value of the government's proffered evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403.  *See Bikundi*, 2015 WL 5915481, at *5 (citing *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990)).  The government is not introducing it to prove that the defendant acted in conformity with his character, but instead because the evidence is highly probative of the defendant's fraudulent intent and shows that he was not acting in good faith when he provided the victims with false bank documents.  As the outcome of the trial will likely turn on the issue of the defendant's fraudulent intent, this strongly weighs in favor of admitting the evidence.  *See United States v. Brown*, 597 F.3d at 407 (affirming the admission of Rule 404(b) evidence that consisted

6

of "a substantial part of the government's case-in-chief" where the outcome of the trial "turned on the issue" of the defendant's intent).

Further, as discussed in the September 404(b) Notice, this evidence will not be cumulative and will not take an undue amount of trial time. It will involve one additional victim witness (Victim D), likely one additional witness from Bank 2, and limited additional testimony from the FBI case agent and FBI forensic accountant, who are already expected to testify.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court admit Rule 404(b) evidence of Defendant Pierce's intent, knowledge, absence of mistake, and common plan or scheme.

    Respectfully submitted,

    ROBERT ZINK
    Chief, Fraud Section
    Criminal Division
    United States Department of Justice

By:   /s/ Blake Goebel
    Blake C. Goebel, Trial Attorney
    Justin Weitz, Assistant Chief
    Criminal Division, Fraud Section
    United States Department of Justice
    1400 New York Ave. N.W.
    Washington, D.C. 20005
    (202) 616-5010
    Blake.Goebel@usdoj.gov